UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STACEY PYNN,                                                    REPORT AND
                                                                RECOMMENDATION
           v.                                                   (REDACTED VERSION)

                    Plaintiff,                                  1:16-cv-00548-LJV-JJM

MATTHEW P. PYNN, NIAGARA COUNTY,
BURT MARSHALL, CAROL HENDERSON,
BIANCA GATTO

                    Defendants.
_____

This action has been referred to me by District Judge Lawrence J. Vilardo for initial consideration of dispositive motions [73].[1] Before the court is plaintiff's motion for partial summary judgment against defendants Niagara County, Marshall, Henderson and Gatto (the "Niagara County defendants") [83], and the Niagara County defendants' motion for summary judgment [76]. Having reviewed the parties' submissions [76-79, 82-87, 90, 91, 94-95, 98-105], for the following reasons I recommend that that plaintiff's motion be denied, without prejudice to renewal in state court, that the Niagara County defendants' motion be granted in part and denied in part, and that this action be dismissed without prejudice as to all defendants.

BACKGROUND

This action arises from a matrimonial and child custody dispute in State of New York Supreme Court, County of Niagara between plaintiff and defendant Matthew Pynn. The couple married on June 15, 2002 and have four children. Amended Complaint [6], ¶¶8, 9, 17.

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

Plaintiff filed for divorce on May 10, 2013 (id., ¶37), and a dispute over custody of the children ensued.

By Order dated July 2, 2013 [91-33], Acting State of New York Supreme Court Justice Richard C. Kloch, Sr. appointed Dr. David Nathanson, Ph.D. "to conduct a custodial/forensic evaluation" of plaintiff and Matthew Pynn, and directed him submit to the evaluation directly to the court. In response to that directive, Dr. Nathanson provided Justice Kloch with an evaluation report dated November 29, 2013 [91-39], ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ After reviewing that report, on December 18, 2013 Justice Kloch told plaintiff's matrimonial attorney that "[y]our lady is in trouble". Amended Complaint [6], ¶92.

On February 25, 2015, defendant Henderson told plaintiff that she believed that she was coaching her children to make false reports, that she was psychologically incapable of parenting them, and that she would be "indicated" for emotional neglect. Plaintiff's Affidavit [83-2], ¶¶70, 72. This was confirmed by letter dated March 16, 2015 [90-2]. Plaintiff contends that she was not given proper notice of that charge or the opportunity to respond to it. Id., ¶¶73-74. At some point prior to July 23, 2015 she challenged that determination (id., ¶¶78-81), and on February 29, 2016 the indication against her was reversed. Id., ¶88.

However, without awaiting the outcome of her challenge to the indication of child neglect, on September 2, 2015, plaintiff entered into a "Custody and Access Agreement" with defendant Matthew Pynn, granting him "sole custody of the minor children of the parties" but giving plaintiff visitation rights. [91-10], pp. 5-6 of 11 (CM/ECF pagination). She did so "on the advice of counsel" (Amended Complaint [6], ¶167), because "the one-two punch of Dr. Nathanson's reports . . . and the Niagara County Defendants' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████ were sufficiently damaging to her position with respect to custody that her attorneys counseled her to agree to supervised visitation and residential custody to Mr. Pynn". Plaintiff's Reply Memorandum of Law [104], p. 12.[2] She "feared that if she did not agree to the arrangement, [the court] would enter an order subjecting her to even more restrictive conditions of visitation". Amended Complaint [6], ¶¶168-69.

The stated purpose of the Custody and Access Agreement, which was "entered into after due deliberation", was to "resolv[e] all issues between the [parties] with respect to custody and access of the minor children". [91-10], p. 4 of 11 (CM/ECF pagination), §B. In the Agreement, plaintiff acknowledged that she was acting "of her own free will and volition and that no coercion, force, pressure, or undue influence has been used against her in the making of the agreement", and that its "terms . . . are fair, reasonable and not unconscionable and are in the best interest of the children". Id., pp. 5 of 11, §§B, C. The Agreement was also executed by the children's guardian, Charles P. Ben II, Esq., "as being in the best interest of the minor children". Id., p. 11 of 11.

On September 22, 2015, Justice Kloch incorporated the Agreement into a "Final Order on Agreement of All Parties Regarding Custody and Access" (the "Final Order"), after "having found the same to be fair and reasonable and having approved the relief requested". Id., p. 2 of 11. ████████████████████████████████████ Bergen Affidavit [91], ¶76.

Plaintiff's Amended Complaint alleges four causes of action: first, that all defendants "conspired with . . . Justice Richard C. Kloch . . . and Charles Ben, to deprive

---

[2]   Plaintiff refers to "Dr. Nathanson's reports" rather than "report". On February 10, 2015, Justice Kloch ordered Dr. Nathanson "to provide an updated custodial evaluation to the court", which would "not [be] reviewed or read by the Court, absent a written stipulation of the parties or the report being received in evidence subject to cross examination". [91-4], pp. 2, 3 of 3 (CM/ECF pagination). Dr. Nathanson submitted the second report to Justice Kloch on or about June 22, 2015 [91-8]. However, it is unclear when Justice Kloch or the parties first read that report.

-3-

Plaintiff of custody of her children in violation of the First, and Fourteenth Amendments to the Constitution", as a result of which she has "suffered denial of custody of her children, loss of income, loss of enjoyment of life, damage to her professional reputation, damage to her personal reputation, [and] emotional pain and suffering" ([6], ¶¶181, 183); secondly, that in violation of plaintiff's right to due process, the Niagara County defendants made a finding that she had emotionally neglected her children, without affording her notice and an opportunity to be heard and without a reasonable basis for that determination (id., ¶¶184-91); third, that all defendants defamed plaintiff by claiming that she had emotionally neglected her children (id., ¶¶192-97);[3] and fourth, that the Niagara County defendants maliciously prosecuted plaintiff by charging her with emotional neglect of her children (id., ¶¶198-200).

In moving for partial summary judgment, plaintiff "requests this Court to hold that the actions of [the Niagara County defendants] violated her right to due process". Plaintiff's Memorandum of Law [90-2], p. 25. She argues that these violations "caus[ed] her to be indicted for maltreatment of her children . . . . deprived [her] of custody of her children and placed her standing as a registered Physician Assistant in jeopardy". Id. The denial of custody is "part of Plaintiff's damages, for which she seeks monetary relief". Plaintiff's Memorandum of Law [101-4], p. 10.

The Niagara County defendants raise several arguments in support of their motion for summary judgment. *See* their Memorandum of Law [91-41]. Because I am persuaded by one of those arguments (id., Point III), I do not reach the others.

---

[3]    Although plaintiff "concedes that her state-law defamation claim is time-barred, and withdraws that claim" (plaintiff's Memorandum of Law [101-4], p. 5), her defamation claim is asserted under 42 U.S.C. §1983, not under state law. *See* Amended Complaint [6], p. 23.

## DISCUSSION

A.      **Should This Court Abstain from Exercising Subject Matter Jurisdiction?**

The Niagara County defendants argue that the "domestic relations exception" to subject matter jurisdiction should lead this court to refrain from exercising jurisdiction over this dispute. Niagara County defendants' Memorandum of Law [91-41], Point III. The exception "is based on the policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack". Thomas v. New York City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). It "is not strictly limited to actions involving the issuance of divorce, alimony, or child custody orders. It also applies to cases on the verge of being matrimonial in nature . . . which includes actions directed at challenging the results of domestic relations proceedings". Lally v. Leff, 2018 WL 4445152, *4 (E.D.N.Y. 2018); Martinez v. Queens County District Attorney, 596 Fed. App'x 10, 12 (2d Cir. 2015).

Although plaintiff argues that she "does not seek an order affecting any state court proceeding" and "does not seek to overturn or modify [the Final Order] in this court" (plaintiff's Memorandum of Law [101-4], pp. 10, 11), that is exactly what she seeks. For example, whereas the Final Order awarded custody of the children to Matthew Pynn, plaintiff asks this court to "permanently enjoin[ ] Defendants [including Matthew Pynn] from violating [her] right to custody of her children". Amended Complaint [6], p. 26, §c. Whereas plaintiff told Justice Kloch that her decision to surrender custody was made of "her own free will and volition" and was "in the best interest of the children"[4] ([91-10], p. 5 of 11 (CM/ECF pagination), §§A, C), she now

---

[4]    "Of paramount concern in any child custody dispute is the best interests of the child." Ames v. Ames, 97 A.D.3d 914, 914 (3d Dept. 2012).

asks this court to conclude that "[d]efendants' actions deprived [plaintiff] of custody of her children." Plaintiff's Memorandum of Law [90-2], p. 25.

And finally, although plaintiff acknowledged in state court that the terms of the Custody and Access Agreement (including her surrender of custody) were "fair, reasonable and not unconscionable" ([91-10], p. 5 of 11 (CM/ECF pagination), §C),[5] she now claims to be "a victim of an outrageous breach of the Defendants' . . . obligations to wield the extraordinary power of the Government fairly". Plaintiff's Memorandum of Law [101-4], p. 38. A finding in favor of plaintiff on her claim of due process violations would negate the Final Order's conclusion that plaintiff's surrender of custody was "fair" ([91-10], p. 2 of 11), since due process "expresses the requirement of fundamental fairness". Lassiter v. Department of Social Services of Durham County, North Carolina, 452 U.S. 18, 24 (1981).

Plaintiff's Amended Complaint "makes clear that her tort claim for monetary damages is, at heart, a dispute surrounding the custody of her child . . . . [A] plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages". Schottel v. Kutyba, 2009 WL 230106, *1 (2d Cir. 2009) (Summary Order). *See also* Mitchell-Angel v. Cronin, 101 F.3d 108, *2 (2d Cir. 1996) ("Mitchell's second and third causes of action either fall within the domestic relations exception or verge on being matrimonial in nature. Specifically, Mitchell's claim that Rivera engaged in malicious prosecution and abuse of process as part of a conspiracy to deprive her of her children's companionship and affections relates solely to the appropriateness of the child custody decree and Rivera's involvement in the custody proceedings. Furthermore, Mitchell's claim that the CWA, the DSS, and Rivera violated

---

[5]   "New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on the party seeking to disprove those presumptions." Aviall, Inc. v. Ryder System, Inc., 913 F. Supp. 826, 831 (S.D.N.Y. 1996), aff'd, 110 F.3d 892 (2d Cir. 1997).

her rights during the course of their investigations and by failing to reunite her with her children also directly relates to the custody issue").

"A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." American Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990). Here, "[t]here is no indication on the record that there is any obstacle to a full and fair determination in the state courts" (Keane v. Keane, 2012 WL 6582380, *3 (S.D.N.Y. 2012), aff'd, 549 Fed. App'x 54 (2d Cir. 2014)), since plaintiff "is pursuing her matrimonial and custody matter in State Supreme Court, represented by competent counsel". Plaintiff's Memorandum of Law [101-4], p. 10. Moreover, if this action is dismissed "for lack of subject matter jurisdiction . . . [plaintiff] may be entitled to commence in state court a new action arising from the circumstances or occurrences alleged in this action". George v. JP Morgan Chase Manhattan Bank, 222 Fed. App'x 84, 85 (2d Cir. 2007).

**B.      May the Court Consider the Merits of Claims or Defenses?**

The Niagara County defendants seek judgment dismissing plaintiff's Amended Complaint "on the merits and with prejudice, [and] awarding the County Defendants their costs and attorney fees, pursuant to 42 U.S.C. §1988". Niagara County defendants' Memorandum of Law [91-41], p. 43. However, having abstained from exercising jurisdiction, I "may not assume jurisdiction for the purpose of deciding the merits of the case". Sinochem International Co. v. Malaysia International Shipping Corp., 549 U.S. 422, 431 (2007). Therefore, I cannot order dismissal on the merits.

Nor may I award attorney's fees to the Niagara County defendants under 42 U.S.C. §1988(b) (authorizing an award of fees to the "prevailing party"). "[D]efendant cannot be

considered a 'prevailing party' when a complaint is dismissed for lack of jurisdiction because the defendant has not prevailed over the plaintiff on any issue that is fundamental to the action." Ecogen, LLC v. Town of Italy, 461 F. Supp. 2d 100, 103 (W.D.N.Y. 2006).

## CONCLUSION

For these reasons, I recommend that plaintiff's motion for partial summary judgment [83] be denied, without prejudice to renewal in state court, and that the Niagara County defendants' motion for summary judgment [76] be granted to the extent of dismissing plaintiff's claim against all defendants (including Matthew Pynn)[6] without prejudice to renewal in state court, but otherwise be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by January 18, 2019.

Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each

---

[6] Although Matthew Pynn has not moved to dismiss, courts must address "the question of jurisdiction . . . even if not raised by the parties". Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 398 (1979). The reasons discussed herein apply with equal force to plaintiff's claims against Mr. Pynn. If plaintiff disagrees, she may ask me to reconsider the dismissal as to Matthew Pynn, or file objections with Judge Vilardo.

objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  January 4, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
